MOORE, J.,
dissents.
hThe majority opinion raises a serious issue regarding how far an appellate court may interject itself into the adversarial process, presumably under the power vested in it through La. C.C.P. art. 2164 to “render any judgment which is just, legal and proper upon the record on appeal.” While Comment (a) to Art. 2164, states, in pertinent part, that “the purpose of this article is to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below,” this power is limited by the pleadings and evidence in the record. The Louisiana Supreme Court emphasized that the “freedom to do justice” mentioned in the official comment is strictly limited by the statutory phrase, “upon the record on appeal.” Morgavi v. Mumme, 270 So.2d 540 (La.1972). In Morgavi, the court reversed the judgment of the court of appeal as lacking the authority under Art. 2164 to order return of a deposit on property subject to a purchase agreement, where no pleading alleged that the vendor failed to tender title,[7] and the record on appeal was inadequate to establish that vendor had failed to tender title. Regarding Art. 2164, the court stated that the phrase “upon the record on appeal” in the statute “has major significance.” Id., at 542; see also, Summerell v. Phillips, 258 La. 587, 247 So.2d 542 (1971): “It means that the court can render any judgment supported by the pleadings and the evidence.” Id.
lain this instance, the majority’s reversal of the trial court’s judgment which granted Dale Oil Company’s (“Dale”) exception of prescription of all claims against Dale is based upon a creative reconstruction of Tealwood’s pleadings to supply an alternative, extant cause of action against Dale for reformation of the warranty deed issued by the Graves. In other words, using the plaintiffs pleadings that were tailored to its action for specific performance against Graves and his alleged alter ego, Dale, the majority has now supplied an alternative cause of action for reformation of the deed, also subject to the 10-year prescription, and based on the same pleadings and the same relief prayed for in Tealwood’s action for specific performance.[8] The unstated *409 reason for this result-oriented exercise perhaps lies in the panel’s knowledge that after Dale’s dismissal, Graves obtained a summary judgment dismissing Tealwood’s claim for specific performance and that judgment is now an unappealable final judgment.
Although technically an action for specific performance is distinct from an action for reformation, the former being properly based on the contract to sell, while the latter on the contract of sale (the deed of conveyance), it is a distinction without a difference in this case. To prevail under either theory Tealwood must prove that Dale, the owner of the mineral servitude, was in fact or by legal fiction the seller in the purchase agreement and/or the grant- or in the deed. Otherwise, inasmuch as Dale is never mentioned in either instrument and was not a party to the agreement, this is simply an oversale by Graves. See generally, Rodgers v. CNG Producing Co., 528 So.2d 786 (La.App. 3 Cir.1988) (in a case of oversale, where the mineral purchaser knows the seller does not own all the minerals under the tract of land in question, the warranty is appropriately limited).
Tealwood made a general allegation of fraud in order to bring Dale into the contract under the alter-ego theory. Absent a showing of a contractual or quasi-contractual relationship, its claim for damages for fraud is delictual and subject to the one-year prescriptive period. Tealwood alleged that Graves did not disclose that Dale owned the minerals, the fraud or nondisclosure being supplied by the language in the warranty deed in which the grantor conveyed all the mineral rights or minerals in and under the surface except the Baker No. 4 well or in the definition of “property” in the purchase agreement which is essentially the same. These allegations of fraud were tested in Tealwood’s motion for partial summary judgment along with the exceptions of prescription at issue in this appeal. Against the defendant’s evidence that Tealwood knew Dale owned the mineral rights to the property, Tealwood supplied a supporting affidavit from John James that stated merely that he was familiar with the facts associated with the transaction and all the allegations of fact are true “to the best of his information, knowledge and belief.” There are no factual details alleged, much less anything approaching the specificity required by La. C.C.P. art. 856 regarding the circumstances of the fraud, and absolutely no supporting affidavits to attest to their truth. The trial court correctly found no contractual relationship between Dale and Tealwood, no evidence of fraud, only the mere conclusory accusation, and that the alter-ego/reverse veil | ¿piercing theory was unsupported by the record in any way.
The record establishes that the August 11, 2003, closing documents included a release of surface rights in favor of Tealwood executed by Dale and expressly state that Dale owned the mineral servitude on the property by virtue of the deed from Graves’s mother in 1990. Dale’s ownership of the servitude was recorded in the public records and was easily discoverable by Tealwood. The record shows, and the trial court found, that all the parties involved in the sale were sophisticated business people or lawyers who had access to the public records and the Department of Conservation to ascertain the status of the mineral servitude or any mineral leases, i.e., whether all or part of the servitude had prescribed or whether any leases were being held by production. Implicitly, the court found willful ignorance on the part of Tealwood regarding what it was truly acquiring with the purchase. Notably, Teal-wood waited five years after the sale to bring the lawsuit, which coincides with the *410 emergence of the Haynesville Shale exploration and development.
Accordingly, because Tealwood established no specificity in its pleadings and offered no evidence to support the claim of fraud, the trial court correctly determined that there was no connection between Dale and Tealwood in fact or by operation of a legal fiction such as reverse piercing of the veil under the alter-ego theory. Any claim against Dale therefore must be delictual in nature and had prescribed.
The majority has gone to great lengths to appear that it is not raising a new issue in this appeal re-interpreting the pleadings. However, were it not | .¡concerned about supplying an alternative theory of recovery, the rehearing panel would not have ordered the parties to brief the very issue of “whether the issue of alter-ego/veil piercing as raised by Tealwood allows for a cause of action for reformation of the contract to effectuate the alleged mutual intent of Tealwood and Graves/Dale.”
My view is that the trial court was in the best position to make the determination of whether fraud was involved in this transaction. Having found no evidence to support the eonclusory allegations of fraud under the alter-ego theory or any other reason to establish contractual privity between Teal-wood and Dale at the trial on the exceptions, the court concluded that any claims of Tealwood against Dale were delictual in nature, subject to the one-year prescriptive period for tort actions, and, therefore, had prescribed. The record reasonably supports these conclusions. Accordingly, I would affirm the judgment of the trial court.

. The only possible applicable reference in the pleadings was an allegation that the vendor declared the deposit forfeited in accordance with the terms of contract; the evidence in the case was related solely to merchantability of title and was silent as to whether or not tender was made.

. Indeed, prior to rehearing, a member of the panel instructed the parties to argue the issue of whether "the pleadings alleged allowed for a cause of action for reformation of the deed.”